Thank you very much, Judge Thomas. May it please the Court, my name is David Schlesinger. I represent Petitioner Tony Khong. With the Court's indulgence, I'd like to very briefly discuss the exhaustion and prostitutial bar issues that the Certificate of Appealability panel had certified in addition to then moving on at much further length to the merits-related Brady-Giglio claim that the Certificate of Appealability panel had also certified after the District Court had declined to do so. Now regarding exhaustion, I think it's fairly plain in the record when you look at the pro se habeas, state habeas petition that Mr. Khong filed in the California Supreme Court that Mr. Khong did indeed present several different Brady-Giglio related theories to the California Supreme Court including a specific request that his conviction be reversed because of the Brady-Giglio violation, a specific request that alternatively that it be vacated and remanded for a new trial, and then alternatively a discovery-related theory. So under this Court's long-standing case law, the essential nucleus of the constitutional claim, the due process claim under the 14th Amendment was presented to the California Supreme Court and sufficient facts were presented as well to make a plan exactly what Mr. Khong was requesting. Indeed, the Superior Court in its reasoned order was able to apprehend the essential nature of Mr. Khong's theory, although we respectfully disagree with its reasoning. Well, the California Supreme Court cited Duval, right? That's a procedural denial, correct? It's unclear in this Court's case law, Your Honor, specifically whether Duval is treated as a procedural denial or if it's treated as a merits-related denial. There are several cases that we cite in the brief mentioning that Duval and a related case, Ex parte Swain, Swan, deal with a failure to plead with requisite particularity. You know, essentially a denial with leave to replead. We note that the state has not in any way argued that the California Supreme Court in issuing that cursory denial with the parenthetical reference to Duval did not in any way indicate that it was doing so for procedural reasons. Indeed, the state's theory has long been that the California Supreme Court did issue a merits-related denial, and so, Your Honor, if that indeed did occur and the state so concedes, then exhaustion would be satisfied in our estimation. Moving on then, thank you, Your Honor. Moving on then to the procedural bar issue, this Court has repeatedly, in cases such as Bennett v. Nunes, required the state to affirmatively plead and prove procedural bar as a defense. At a bare minimum, this Court should acknowledge that no procedural bar exists here because the state has never in any phase of this case, whether it's in the answer filed in the district court or in its answering brief period, it's never in any way attempted to assert a pure procedural bar defense. It has not citation was in any way an adequate and independent procedural ground that would bar this Court or any federal court from entertaining the merits of Mr. Kang's Brady-Giglio claim. So moving on next, if there are no further questions regarding those two issues, moving on next to the merits of Mr. Kang's Brady-Giglio issue. You know, our central theory is that the, you know, regardless of which state court opinion, this Court seems to be the last reasoned decision from the state courts. Mr. Kang did file three separate state court habeas petitions in three separate courts, the Superior Court, the Third District Court of Appeal, and the California Supreme Court. It's our view that there was an unreasonable application of clearly established U.S. Supreme Court case law regarding Brady- regarding the materiality of then-officer Winchester's testimony at trial. And we noted he also testified in the preliminary hearing, which has included the excerpts of records. So he was an important state witness in, you know, not only supplying some facts regarding the traffic stop involving- Counsel, I'm looking at the June 1, 2017 Superior Court decision. Is there any fact in that decision that the Superior Court, in your view, got wrong? As opposed to, you know, we think he was material, but is there anything that the Superior Court recites as a fact, what was presented at trial or what wasn't presented that's straight out, in your view, wrong? As opposed to their conclusion? We don't argue that they recited the record from the trial incorrectly, Your Honor. What we're arguing is that the significance of Winchester's testimony is grossly understated. And that is that Winchester didn't- his main goal in testifying, the main goal of the state in presenting him as a witness was to corroborate the putative victim, S.T.'s, testimony. You know, there were very few witnesses who testified in this case. But Winchester had stopped C.T., and S.T. is the one who testified, right? That's correct, Your Honor. But in talking about his contact with C.T. and Mr. Kong's supposed accomplice, Stephen Tran, it served to corroborate S.T.'s testimony about the central makeup of the putative scheme, involving transportation arrangements that Stephen Tran and Tyrone Tran would arrange with the two minor girls. The testimony from Officer Winchester regarding the items that he supposedly discovered in C.T.'s possessions, including 20 to 30 condoms and Plan B pills, and key physical evidence that was never actually entered into evidence at trial. It was merely Winchester's testimony about that. And the supposed phone calls from Mr. Kong to Stephen Tran during this traffic stop in which Mr. Kong, among other things, in a text message, supposedly informed Stephen to leave the scene. I won't use the exact words because there was a vulgar racial epithet included in that. But essentially, that is key evidence, corroboratory evidence that directly linked Mr. Kong to C.T. and Stephen. Counsel, was the Superior Court wrong, though, when it said, and I have this at E.R. 4, the crucial testimony at trial came from S.T. and her testimony showed that Petitioner arranged sex acts for her and C.T. and that he transported them or an unreasonable interpretation of the facts? I wouldn't say that that is an unreasonable interpretation of the facts, Your Honor, but what's problematic here is that because Mr. Winchester could not be impeached regarding the then impending investigation into him, what eventually resulted in convictions for very grave crimes that he had committed. But for that ability to actually impeach him on cross-examination regarding investigations into him, there was no opportunity then to in any way diminish or somehow to show that this corroboratory evidence was unreliable. So, Counsel, though, the standard, as I understand it, is that we have to ask, could a fair-minded jurist conclude there is no reasonable probability that the undisclosed evidence would have changed the outcome because S.T. is the crucial witness? So, no fair-minded jurist could make that conclusion. That's one of the two standards that the Supreme Court discussed in Kyle's view with Lee, Your Honor. The other is whether the confidence in the trial's outcome was undermined in such a way that the defendant was deprived of a fair trial. And one of our arguments, Your Honor, is that by not being able to have a devastating cross-examination of Winchester regarding the pending investigations into him, it undermined confidence in the outcome of the trial. And also under the standard that you articulated, Your Honor, the other Kyle's view with the standard, there actually is, I think, a reasonable probability that a fair-minded jury could have decided differently if it saw that the state, assuming the state under the scenario even decided to use Winchester as a witness, which is certainly not a certainty, it could have undermined the confidence that the jury had in the entire state's, in the state's entire case in chief if he had such a flawed witness as Winchester testifying. And again, he was the only witness available to provide corroboratory evidence. There was no physical evidence introduced at trial. There were no cell phone records. There were no supposed John's customers of the scheme who were given immunity to testify or otherwise reach deals. I may be, this is a kind of collateral point, and I may be misremembering, but weren't some of the defendant's relatives who testified on his behalf, didn't they corroborate that some of the rooms in the downstairs looked the way that S.T. testified they looked? Or am I misremembering that? There was testimony, including photographic evidence that showed that the rooms were similar to the testimony that S.T. gave again, but that's only one facet of her overall testimony. And again, before I reserve the remaining time for rebuttal, your honor, I would emphasize that, you know, not, not only was Winchester's corroboration important, but it was, it was also important because as we argued on in pages 22 to 24 opening brief, S.T., and we have sympathy for her because she had a very troubled childhood, but she, she gave inconsistent testimony when you consider the preliminary hearing, her statement to then Detective Morris, and then her testimony at trial. She gave inconsistent testimony about eight different topics, eight different categories of operative facts, you know, ranging from the small, the, the, the gender breakdown of her, of her siblings to a very important category, which is whether she had sexual intercourse with Mr. Kong. So if there are no further questions, I'd like to reserve the remaining time for rebuttal. Certainly. We'll hear from the state. Good morning, your honors. David Andrew Eldridge, Deputy Attorney General for Respondent. Regarding the... Let me clear up, are you, do you believe that the claims are exhausted? No. As I pointed out, the, what the state petition argued and what the opening brief argued are different things. He did not, the state petition, well, and, and insofar as how to construe the state petition, the same petition was resubmitted in each court, and that petition was drafted by an attorney. In fact, in the Superior Court, it was drafted and prosecuted by counsel. So, and then in the California Supreme Court, when given an opportunity to explain why you're submitting any claims, he said nothing, which means he fairly indicated he wasn't presenting anything that wasn't previously set forth in a counsel petition at the lower levels. So, there's no, there's no reason for this court to construe it broadly, and there's certainly nothing that would require the California Supreme Court to have construed it broadly. It's a counsel petition, and it can be construed on its terms. And do you agree that the claims are not procedurally barred? Yes. Okay. No, I, the California Supreme Court, by citing Duvall, Duvall can stand for a procedural failing, but to simply say that it always does is false. This court in CBOF has already pointed out, no, it also, it means more than that. It can also simply mean that you fail to meet the substantial requirements, substantive requirements for ruling. So, it is false to say that citing Duvall, even without an explanation, implies that it must be procedural. Moreover, whatever one might think it may commonly mean, when the Supreme Court provides its explanation of why it's citing that case, that's binding. The reason they cited it was for failure to supply documentary evidence. No matter what someone else thinks Duvall could have stood for, they just told you why they cited it. So, that's binding here. All right. Why don't you proceed to the merits, then? Sure. Unless you had something else you wanted to argue. Well, I will begin with the fact that jurors did not request Winchester's testimony. Jurors requested preliminary hearing testimony of the victim regarding sex with petitioner. So, and when the court volunteered and said, oh, I'm going to, I'll give you that, I'll give you what we requested. I'll also give you Winchester's testimony. All we know from the jurors is they said, we don't want it. So, they didn't consider it all that important as suggested by petitioner. We're not going to contest, after all, Winchester was indeed later prosecuted. We're not going to contest that he clearly did something grave and horrible. The question isn't, though, whether that's true, it's whether the people had evidence of it during the 2014 trial. The, we point out why the only representations in the state petition are hearsay, at least double and I think triple. But even if you accept for the sake of argument, and I don't know that it's true, that indeed there were two investigations. You have one that where something was reported in 2015 for the first time, and therefore it couldn't possibly be, have been disclosed during the 2014 trial. So, I won't really discuss that one any further, but there was something, there was some form of investigation in 2013. And while a reporter calls it a sexual misconduct investigation, she doesn't actually purport to quote the officer saying so, but even assuming it was, what came of it, we, all we know is that there were no charges filed. So it can't be that there's no evidence that the prosecution learned of anything in the way of incriminating evidence from that, because literally all we know is that no charges were filed. So that's what was presented to the California Supreme Court and the Supreme Court, quite logically, a fair-minded jurist would think, I don't know what, if anything, came of the 2013 investigation other than no charges. So how can I say that there was something that would have been admissible at trial for the defense to present regarding Winchester when I still don't know what came of it other than no charges? They use the word allegations a lot. Well, allegations are not evidence of anything. In fact, jurors are told that as a standard matter in trials. If he's, if instead the argument is that there were allegations from some person with personal knowledge, which I was assuming the victim, there simply is no evidence of that whatsoever as resulting from the 2013 investigation. And also, even if one could argue, well, Winchester's testimony was meaningful. Winchester's testimony was also corroborated in that this investigation into prostitution started because of Winchester's statements to another officer about two apparent victims, one present, one at another place involving someone named Tony. If he didn't see what he saw, said he saw, and if he didn't hear what he said he heard, it would be bizarre that the resulting investigation would turn out to involve those same two persons involved in a prostitution scheme involving someone named Tony. So even if you wanted to de novo ask whether or not he was material, his version was itself necessarily corroborated by the fact that what followed was consistent with the details he recited, and it would be bizarre that that would follow if indeed he didn't see and hear what he said he saw and heard. So I, those are the major points I wanted to make. I am more than happy to answer questions, but there's nothing more I affirmatively wish to say. Any further questions? Thank you for your argument. We'll hear a rebuttal. Thank you, Your Honor. Thank you, Your Honor. Briefly, I'd like to turn to the actual California Supreme Court article submission, newspaper article submission, which appears at ER 1333, ER 1334. And the paragraph here is the second paragraph on page 1334, the final sentence, which is quoting from a spokesman, you know, an on the record quotation from a Sacramento Police Department spokesman about one of the investigations. Heinlein said the probe began in 2013 and that Los Rios officials were notified of it at the time. And that's significant, Your Honor, because I know that my opponent has tried to categorize these on the record statements as involving charges that weren't actually filed, but that's not entirely clear, Your Honor, because the actual complaint filed against Mr. Winchester in California Superior Court in San Mateo County, which appears among other places on record, ER 1167 to 1186, includes allegations regarding two women in Sacramento County and the incidents involving them occurred during the July 2013 and August 2013. So it's well within the post-charging retrial period during which it would have been key for Mr. Kang's investigatory purposes to have this information. But why would that be admissible when it's just an investigation? You know, if I'm the trial judge, I look at it, I consider it, but it's by no means going to be admitted into evidence when it hasn't been established by any standard of proof or even charges. Well, two points, Your Honor. First is that the mere discovery of that investigation, the production of that evidence regarding the investigation to Mr. Kang and his defense counsel would have severely impacted the state's calculus regarding whether to have called Mr. Winchester at all as a witness. Not necessarily. I mean, you're saying a reasonable jury could have come to a different decision and maybe a trial judge could have allowed it into evidence. But the standard is not that. It's, you know, this trial, have you ever done one of these cases in trial, counsel? I can't say that I have, Your Honor. Okay. Well, the jury... I'm a normally appellate attorney. Right. And there's nothing wrong with that. I'm with normally appellate judges up here. But the jurors look at the victim and do they believe the victim? And they don't have to believe the victim about everything. Maybe she wasn't telling the truth about the type of sex she had or the times that she had sex with the defendant. But did they believe what she said? That's not going to be affected by whether the police officer is a jerk or not, is it? I think, Your Honor, that, you know, given that she had several inconsistencies in her testimony that I alluded to earlier on which she had been impeached, the absence of any kind of corroboratory evidence regarding her testimony would have further undergirded it. And so we don't know precisely what the jury would have done, but you only have to show a reasonable probability under Kyle's that the outcome might have been different or that the absence of this impeachment evidence undermined confidence in the trial's outcome. If there are no further questions, I'd be pleased to submit. Well, thank you for your argument today. Thank both of you. And the case just argued will be submitted for decision and will be in recess for the morning.
judges: THOMAS, BENNETT, Lasnik